```
 1              IN THE UNITED STATES DISTRICT COURT FOR

 2                 THE EASTERN DISTRICT OF LOUISIANA

 3                          AT NEW ORLEANS

 4   UNITED STATES OF AMERICA,        )
                                      )
 5                    Plaintiff,      )
                                      )
 6         v.                         ) Case No. 94-CR381
                                      ) December 21, 2011
 7   PAUL HARDY,                      )
                                      )
 8                    Defendant.      )
     _____ )

 9

10

11

12                  TRANSCRIPT OF PROCEEDINGS

13          BEFORE THE HONORABLE HELEN G. BERRIGAN

14                  UNITED STATES DISTRICT JUDGE
```

```
21   SUSAN A. ZIELIE, RPR, FCRR
     Official Court Reporter
22   HB 406
     500 Poydras Street
23   New Orleans, Louisiana 70130
     504.589.1781
24   susan_zielie@laed.uscourts.gov

25
     Proceedings Recorded by Computer-aided Stenography.
```

```
 1   APPEARANCES:

 2

 3   For the Government:          MICHAEL EDWARD McMAHON, AUSA
                                  US Attorneys Office
 4                                650 Poydras Street
                                  Suite 1600
 5                                New Orleans LA 70130
                                  504.680.3000
 6                                usalae.ecfcr@usdoj.gov

 7

 8   For the Defendant:          HERBERT VICTOR LARSON, ESQ.
                                  Herbert V. Larson, Attorney at Law
 9                                700 Camp Street
                                  New Orleans LA 70130
10                                504.528.9500
                                  hvl@hvllaw.com
11
                                  MARILYN MICHEL FOURNET, ESQ.
12                                Marily M. Fournet, Attorney at Law
                                  PO Box 78015
13                                Baton Rouge LA 70837
                                  225.383.5107
14                                mfournet@bellsouth.net

15                                DENISE M. LeBOEUF, ESQ.
                                  Capital Post-Conviction Project
16                                  of Louisiana
                                  1340 Poydras Street
17                                Suite 1700
                                  New Orleans LA 70112
18                                504.610.7899
                                  dleboeuf@aclu.org

19

20

21

22

23

24

25
```

 1              NEW ORLEANS, LOUISIANA; WEDNESDAY, DECEMBER 21, 2011

 2                            9:48 A.M.

 3              THE CLERK:  Criminal action 94-381C, United States of

 4    America vs. Paul Hardy.

 5              MR. McMAHON:  Your Honor, Michael McMahon for the United

 6    States.

 7              MR. LARSON:  Morning, Your Honor.  Herbert Larson,

 8    Michele Fournet and Denise LeBoeuf on behalf of Paul Hardy, who

 9    is present in court today.

10              THE COURT:  Okay.  And, just to acknowledge, the defense

11    filed a motion to continue the sentencing hearing in this case

12    because they wanted to address some issues that -- I can't say

13    it's a presentence report.  Kind of a post-sentence report, I

14    guess.  I'm not exactly sure what to call it.

15              I denied that motion, well, for a couple of reasons.  It

16    was late filed.  This Presentence Report, post-sentence report,

17    is not a whole lot different in any significant way than the one

18    that was produced in May.  This date was set actually to

19    accommodate counsel.

20              But, having said that, I will leave the record open;

21    and, if the defendant wishes to file any objections or

22    clarifications or whatever you might want to file with respect to

23    the sentencing report, we'll certainly keep the record open and

24    you can do that.

25              MR. LARSON:  Thank you, Your Honor.  Actually, Your

1    Honor, if you will accept the oral objections today, that would

2    be sufficient for our purposes.

3              THE COURT:  Okay.  That's totally fine.

4              All right.  Mr. Hardy, have you received a copy of the

5    Presentence Investigation Report?

6              THE DEFENDANT:  I just got it.

7              THE COURT:  Pardon me?

8              THE DEFENDANT:  Yeah, I got it right now.  I just got

9    it.

10             THE COURT:  Okay.  All right.

11             Okay.  Do you want to go over the objections you have,

12   Mr. Larson, to it?

13             MR. LARSON:  Yes, I do, Your Honor.

14             And, Your Honor, bearing in mind that the reason I am

15   making these objections is because this is the first time since

16   the year 2000 that we will have a final judgment in this case.

17   And that may have a bearing on both how the Fifth Circuit sees

18   this case, reviews this case, or how the supreme court might view

19   this case.  And I need to ensure that Mr. Hardy's rights are

20   preserved.

21             So I would divide these into two groups, Your Honor.

22   First the legal objections, which I would re-urge for the Court.

23   And then the specific objections to the Presentence Report

24   itself.

25             THE COURT:  Okay.

1    MR. LARSON:  The first, Your Honor, is that we would

2    re-urge -- and it's already been reduced to writing in the record

3    -- the Indictment's failure to charge a capital offense or an

4    offense that carries a sentence of life imprisonment.

5    We would also re-urge our previously filed written

6    objection to the constructive amendment to the Indictment; our

7    previous written objection to the fact that the resentencing in

8    this case constitutes double jeopardy.  We would also re-urge our

9    jurisdictional objections to the fact that there is no federal

10   jurisdiction in this offense.  And, finally, we would object to

11   the imposition or potential imposition of a life sentence as

12   called for by the PSR on the grounds that, under the Indictment

13   as presently written, that the maximum sentence is 11 years

14   imprisonment.  And so those would be our legal objections.

15   And, I'm aware that the Court has already addressed all

16   of those, but we would preserve them for the record.

17   THE COURT:  So preserved.

18   MR. LARSON:  Thank you, Your Honor.

19   In terms of the PSR itself, Your Honor, just to clarify

20   one matter for the record.  The reason that we did not

21   participate in an interview until after October 6th, Your Honor,

22   is because, up until that time, our client faced a potential

23   capital sentence in this case; and, permitting our client to be

24   interviewed, in conjunction with the preparation of a PSR, at a

25   time when a potential capital sentence was still available

1    because of the government's pending appeal to the Fifth Circuit,

2    would have been frankly unwise on the part of defense counsel.

3    And so we simply said no, until the appellate issue of the

4    capital sentence is resolved, we cannot permit our client to be

5    interviewed.

6              THE COURT:  Okay.

7              MR. LARSON:  Hence the explanation for the delay.

8              With regard to the PSR itself, I would note that Michele

9    Fournet should also be listed as defense counsel, together with

10   Denise LeBoeuf, on page 1 of the PSR.

11             MS. FOURNET:  And, if I could interject here, Your

12   Honor.  I received neither notice of nor a copy of either

13   Presentence Report, the one in May or the from this past week.

14   Nor was I notified -- in fact, I was notified by Mr. Larson by

15   telephone that he had received a notice.  When I attempted --

16   went to the docket sheet and attempted to open the PSR, it would

17   not let me open it.  So I'm seeing it for the first time this

18   morning.  The computer did not seem to understand that I am one

19   of Mr. Hardy's counsel.  So I feel someone disadvantaged today,

20   Your Honor.

21             THE COURT:  All right.

22             MR. LARSON:  To continue, Your Honor -- and I would also

23   note that none of the objections that we have with regard to the

24   PSR have an impact on the Sentencing Guideline's calculation in

25   this case.

1          THE COURT:  Okay.

2          MR. LARSON:  On page 3 where it notes that Mr. Hardy's

3    education is 11th grade, I think that Your Honor is aware that is

4    not an accurate statement.

5          With regard to page 5, in paragraph 10, it was not

6    motions filed by Davis and Hardy.  It was actually the direct

7    appeal to the Fifth Circuit that resulted in the reversal of the

8    death sentence in this case.

9          With regard to paragraph 11, the description that the

10   district court found that the sentence of death was prohibited as

11   to Count 3, that would obviously be incorrect.  Count 3 was the

12   count that had been dismissed by the court of appeals.  It was

13   Counts 1 and 2, and it was actually a finding that *Atkins vs.*

14   *Virginia* prohibited the imposition of the death penalty.

15         Obviously we would object to the statement of the

16   offense conduct in its entirety, and note that the trial record

17   is the best evidence of the offense conduct in this case.

18         Going further, Your Honor, with regard to paragraph 63,

19   Mr. Hardy did in fact report a history of neglect in his

20   childhood, and I believe that the testimony produced at the

21   Atkins hearing is the best evidence of that neglect.

22         And then, finally, Your Honor, with regard to paragraph

23   73, where it states that the defendant has no history of mental

24   or emotional problems, the eight-day Atkins hearing in this

25   matter obviously contradicts that particular finding in the PSR.

1          THE COURT:  Well, the balance of that paragraph actually

2    notes the mental retardation issue.

3          Okay.  All right.  Go ahead.  Anything else?

4          MR. LARSON:  My client has asked me to note that

5    additional information was in fact available, and that the

6    transcript of the Atkins hearing was available.

7          THE COURT:  Yes.

8          MR. LARSON:  And, other than that, Your Honor, that

9    would conclude our comments with regard to the Presentence

10   Report.

11         THE COURT:  Right.  Yeah.  And I agree that there were

12   errors, incorrect information, in this Presentence Report.  But,

13   as you mentioned, it doesn't affect the guideline calculations.

14   So I'd note that and I appreciate the fact that you corrected

15   them and noted them.

16         Any corrections or suggestions or deletions from the

17   government's perspective on the Presentence Report?

18         MR. McMAHON:  Nothing material, Your Honor.

19         There's Officer Coman did note -- I can grab the

20   paragraph -- that the genesis of the case involved the arrest of

21   another NOPD cop, of whom he was never familiar.  But it's not of

22   consequence.

23         And, again, these are trivial objections that do not --

24   that don't affect the guideline.

25         And I note that we're back -- you know, basically, we're

1    back to the status at verdict.

2        And Damon Causey, who was not subject to capital

3    punishment, he received a life sentence.  So, in essence, Hardy

4    is in the same position that Damon Causey was at verdict.

5        And any suggestion that the Court -- that this man this,

6    cold murderer should receive an 11-year sentence, is

7    preposterous.  And we just want to reiterate that.

8        THE COURT:  Okay.  All right.

9        So, to the extent that there was no -- to the extent --

10   I'm acknowledging the objections and corrections from the defense

11   and the government with respect to the Presentence Report.  To

12   the extent that there were no other objections cited to the

13   report, I will accept the factual statements in the PSI to which

14   there was no objection as my findings of fact.  And order the PSI

15   with the exception of the -- well, you would know what the

16   recommendations are -- be made a part of the record and filed

17   under seal.

18       We have a total offense level of 43, a criminal history

19   of I, which would indicate life imprisonment; two to five years

20   supervised release if he were ever to be released; $25,000 to a

21   250,000 fine, plus costs of imprisonment, supervision.

22       Probation is not available.

23       Is there somebody from Probation here?

24       The restitution, I think there is $3,593.05.  What is

25   that about?

```
 1              Mr. McMahon, do you know what that would be about?
 2              MR. McMAHON:  I believe the funeral expenses, Your
 3    Honor.
 4              US PROBATION:  The funeral expenses.
 5              MR. LARSON:  And that is mandatory.
 6              THE COURT:  I'm not challenging that.  I just want know
 7    what it was.  I just didn't know.
 8              $3,593.05 restitution; $200 special assessment.
 9              Mr. Hardy, is there anything that you wish to say before
10    sentence is imposed?
11              MR. McMAHON:  Judge, I just want to clarify that Kim
12    Groves, the victim's -- two of her children also --
13              THE COURT:  Yeah, I have that.  I have that right here.
14    I was just asking him first if he had anything to say, and then I
15    was going to ask the family members.
16              MR. McMAHON:  Thank you.
17              THE COURT:  No problem.
18              THE DEFENDANT:  No, Your Honor.
19              THE COURT:  All right.
20              And Mr. Larson, Ms. Fournet, Ms. LeBoeuf, anything that
21    you wish to say?
22              MR. LARSON:  Very, very briefly, Your Honor.
23              I'm aware that the wheels of justice have ground slowly
24    in this case, since 1994.  I'm personally very well aware of
25    that.  It's taken up over one-fourth of my life.  Over half of my
```

1    legal career has been spent involved in this case.

2           But I think, to finish the saying, I think they have

3    ground exceedingly fine in this case.  I think that they have

4    produced a just result.

5           I understand that that may be very hard for people, some

6    people in this courtroom, to accept.  I hope, in time, they will

7    come to accept it.  I think, if they knew Paul Hardy as well as I

8    knew Paul Hardy, that they ultimately would accept that.  And I

9    think that, ultimately, the right thing has been done in this

10   case, Your Honor.

11           THE COURT:  Okay.

12           Mr. McMahon -- Ms. Fournet, Ms. LeBoeuf, anything you

13   want to add?

14           Mr. McMahon, you want to call anybody you wish to have

15   speak, or yourself?

16           MR. McMAHON:  Your Honor, I think just the horrendous

17   cold-blooded nature of that murder 17 years ago really speaks for

18   itself.  But I really was not going to say anything at this

19   sentencing, leaving it up to Jasmine and Corey Groves.

20           But Mr. Larson -- well, the Paul Hardy that he knows, as

21   if dignifying and humanizing this stone-cold killer.  And the

22   Paul Hardy that I know and that the Court knows, through the

23   evidence that we adduced at trial through those tapes, is a Paul

24   Hardy who laughed with Len Davis and celebrated his putting a

25   9-millimeter bullet in the head of Kim Marie Groves on

1    October 13, 1994.  Which, ironically enough, was the eve of

2    Jasmine Grove's 13th birthday.  That's the Paul Hardy.

3            Any attempt to humanize this killer disgusts me.

4            And I would like at this point that Jasmine Groves and

5    then followed by Corey Groves, Kim Groves' daughter and son,

6    would like to address the Court.

7            THE COURT:  Okay.  Come on up.

8            Mary, nice to see you.

9            VICTIM ADVOCATE:  Nice see you, Judge.

10           MS. GROVES:  Good morning.

11           THE COURT:  Good morning.

12           MS. GROVES:  My name is Jasmine Groves.  I am the

13   daughter of Kim Marie Groves.  My mother was killed by Paul

14   Hardy, who acted under orders of New Orleans Police Officer Len

15   Davis.

16           I'm speaking on behalf of myself, my sister Stephanie,

17   and my Uncle Nathaniel Groves.  I'm also speaking on behalf of my

18   great-grandmother, the late Georgia Falls, and my grandfather

19   Nathaniel Jack Groves, and my Aunt Esther Washington, all who

20   have died while waiting for this case to finally be closed and

21   over with.

22           I understand that we are here today for the sentencing

23   of Paul Hardy, who is considered to be mentally retarded, for his

24   part and responsibility for the death of Kim Groves, my mother.

25           We appreciate the opportunity to express to the Court

```
 1    the impact of my family caused by the murder of my mother.

 2              Everything changed when my mom died.  My mother had

 3    three children, my brother Corey and sister Stephanie, who were

 4    16 years old, and I was 12 when our mother was killed.  We kids

 5    were forced to become adults overnight.  That night was the end

 6    of our childhood as we knowed it.

 7              We are extremely grateful for the successful efforts of

 8    the Department of Justice and the US Attorneys' Office in

 9    prosecuting this case.

10              I also thank Mary Howell for everything she has done for

11    our family and always fighting for us.

12              Thanks to Mike McMahon, who never stopped fighting and

13    pushing for justice, for true justice for my mom.  A job well

14    done.

15              Thanks to Jim Letten for everything he has done.

16              If not for you all, it would have been a cold case.  You

17    are truly appreciated.

18              Today, we are here to talk about Paul Hardy, and I have

19    some things that I want to say to him.

20              Mr. Hardy, on October 13, 1994, you shattered my

21    world --

22              THE COURT:  Mary, want some water?

23              MS. FOURNET:  Yeah, that would be great.

24              THE COURT:  The table should have water.

25              MS. GROVES:  -- by taking away the best thing I ever
```

 1   had.  At the same time, you gave me the worst birthday present I

 2   could ever have.  Did you even know I turned 13 the next day?

 3           I remember like yesterday, the hole you left in my

 4   mother's head, the way her brains laid on the ground.  The

 5   dreadful phone call not even an hour after my mom left from

 6   singing happy birthday to me and preparing for my party that

 7   never happened.

 8           I looked -- the look of sorrow in hers eyes for having

 9   to leave me.  The feeling of seeing my mother take her last

10   breath, and there was nothing I could do about it.

11           I knew you knew she was someone's child, but my

12   questions are:  Did you even think of the pain and hurt you were

13   causing her family, or that she was someone's mother?  Did you

14   even care?  Do you even know how you left my life torn apart, or

15   how October is the hardest month of the year for me?  Or the

16   times I just break down and cry because my heart still hurts?  Do

17   you even know how I yearn for my mother's voice just one more

18   time?

19           Was it just a job you had to do when you took her life

20   for $300, or was she just that worthless to you?

21           I don't believe in the death penalty because my Lord

22   would have the last say so.

23           I also don't believe you, Paul Hardy, are mentally

24   retard.  If you are mentally retarded, then I guess I'm

25   borderline crazy myself.  I sincerely do not understand how you

1  can organize groups and give orders and be considered mentally

2  retarded.

3       I know that I cannot change the ruling that has been

4  made.  I respect the Court and its rights to make this decision.

5  But that does not mean I have to agree with it.  And, in my

6  heart, I don't believe that Paul Hardy's mentally retarded.

7       And I hope that this is the last time my family will

8  have to relive this heartbreaking night.  I pray that the law

9  never changes and allows Paul Hardy or Len Davis to walk free on

10  the streets again.

11       I do not know whether Paul Hardy has any remorse for

12  what he has done, or not.  If he has, he has never expressed it

13  to me or my family during these many, many years.

14       Whether or not he say he is sorry, I still believe he

15  needs to remain in prison for the rest of his life so he can't

16  harm anyone else.

17       I do believe that God will take care of it all, and I

18  hope and pray that no other family ever have to go through what

19  we have experienced; that no other children will have to grow up

20  without their mother because a police officer and his hit-men

21  decide to take the law into their own hands.

22       My mother was a beautiful and brave woman.  She spoke up

23  for her beliefs, and she died trying to protect our community and

24  make it a better, safer place.  Even though Paul Hardy and Len

25  Davis took her life, they did not and cannot take her spirit.  My

1   mother's spirit lives on.  She was an inspiration and a guide to

2   all of us who are left behind to mourn her death and celebrate

3   her life and her courage.  And no one, not even Paul Hardy or Len

4   Davis, can ever take that away from us.

5           Thank you.

6           THE COURT:  Thank you.

7           MR. GROVES:  Good morning.  My name is Corey Groves.

8   I'm the only son and oldest child of Kim Marie Groves.

9           On October 13, 1994, one day before my younger sister's

10  13th birthday, my mother, the late Kim Marie Groves, was ordered

11  killed by the New Orleans Police Officer Len Davis at the hand of

12  Paul Hardy.

13          At the time of my mother's death, I was 16.  The average

14  16 year old normally lives life having fun and enjoying time with

15  friends, family, school, et cetera.  I did all of these things,

16  up until 1994, October 13th.  That night changed my life forever.

17  That night is one I'll that remember.

18          When I was 13 years old, I was diagnosed with Crone's

19  Disease, a serious illness.  I spent much of the next two years

20  in the hospital.

21          No matter how much else she had to do, my mother was

22  there with me at the hospital almost every night.  Oftentimes,

23  she would come straight from work, after doing a 12 hour shift.

24  She would be exhausted, but she insisted on sitting with me at

25  the hospital, night after night.

1    It is one of the those deep regrets of my life that I

2  was not able to protect my mother from harm the way she protected

3  me.

4    To lose a loved one is not an easy thing for any family;

5  but, when that loved one is murdered, it really destroys lives in

6  ways that are not easy to put into words.  Especially when that

7  loved one dies, takes her last breath in the arms of a child.

8    I received a call from a neighbor that my mother was

9  screaming; and, when I ran outside to see what was going on, I

10  found my mother, lying in the street, dying from a bullet wound

11  to her head.  I cried while calling her name:  Kim, Kim, Momma,

12  Momma.  Looking into her eyes, I could see she was trying to

13  respond, but couldn't.  I clearly remember seeing both eyes

14  rapidly move from side to side, and then very suddenly stop.  At

15  that time, I knew she was gone.

16    After that night, my life changed for the worst in many

17  ways, beginning with drug abuse and ending with me going to

18  prison.  I didn't care anymore whether I lived or died.  I

19  slipped into a state of mind that had me suicidal, not caring

20  much about anything, and heavily bent on revenge.  I desperately

21  wanted to get stopped by an NOPD officer so that I could either

22  kill one of them or force one of them to kill me.  This is how

23  angry, hurt and confused I was after the murder of my mother.

24    I thank God that nothing like that ever happened, and

25  for the strength of my loving family, especially my grandmother,

the late Georgia Falls, and my grandfather, Nathaniel Jack
Groves, that I was able to survive those terrible times.

I give thanks that I am now happily married and the
father of five children, two step and three of my own.  I have
struggled to put my life back together and to raise my children
right.  Despite all of this, though -- despite all of this, those
dark days of 1994 haunt me, and I know that they will be with me
forever.

Today, a man who acted as God and decided when and how
my mother would leave this world has convinced the Court that he
should live.  To me, the death penalty would be an appropriate
punishment for what Paul Hardy did to my mother.  But I believe
this would be a cowardly and easy way out of paying for what he
has done.  Honestly, I am very satisfied that Paul Harley would
grow old in the mental ward of a prison, and I hope that he will
spend the rest of his live there.  This man took my mother away
from her children, her family and her friends and her life.  She
was a beautiful young 32-year old mother of three, well-known and
very much respected and liked in our community.  I want Paul
Hardy to live, so that he will have the chance to think every day
about what he did, and die knowing that hell has a place waiting
for him.

I know that I should try to forgive Len Davis and Paul
Hardy for what they did to my mother and my family.  I have to
admit that I'm unable to do that.  Instead, I ask God to please

1    forgive me for not being able to forgive them.  And I also ask

2    that God make sure that there is justice in this case and that my

3    mother's sacrifice is not forgotten or in vain.

4         Thank you.

5         THE COURT:  Thank you.

6         MR. McMAHON:  Your Honor, I'd like to file both the --

7    Jasmine and Corey wrote out their statements, and I want these

8    filed into the record.

9         THE COURT:  They will go into the record.

10        Anything else from the government?

11        MR. McMAHON:  No.

12        THE COURT:  Okay.

13        Mr. Hardy?

14        All right.  Pursuant to the Sentencing Reform Act of

15   1984, it's the judgment of Court that the defendant Paul Hardy is

16   hereby committed to the custody of the Bureau of Prisons to be

17   imprisoned for a term of life as to each of Counts 1 and 2, to be

18   served concurrently.

19        I find that the defendant does not have the ability to

20   pay a fine, so I'll waive the fine in this case.

21        However, restitution is mandatory.  In accordance with

22   18 United States Code, Section 366(a), restitution in the amount

23   of $3,593.05 is owed to Jasmine and Corey Groves.  The payment of

24   the restitution shall begin while the defendant is incarcerated.

25   If released, any unpaid balance shall be paid at a rate of $50 a

1    month.   The payment is subject to increase or decrease depending

2    on the defendant's ability to pay.

3              I find the defendant does not have the ability to pay

4    interest on the restitution, so I will waive the interest

5    requirement in this case.

6              Restitution payments shall be made to the Clerk of Court

7    and the US Bureau of Prisons.   The Probation Office and the US

8    Attorneys Office are responsible for enforcement.

9              In the event the defendant should be released from

10   imprisonment at any time, he shall be placed on supervised

11   release for a term of five years.   This term consists of

12   five years as to each of Count 1 and 2 to be served concurrently.

13             Within 72 hours of release from the custody of the

14   Bureau of Prisons, he is to report in person to the probation

15   office to the district in which he is released.

16             While on supervised release, he shall not commit any

17   federal, state or local crime.   He shall comply with the standard

18   and mandatory conditions that have been ordered by the Court.   He

19   shall not possess a firearm, ammunition, destructive device or

20   any other dangerous weapon.   He shall cooperate in the collection

21   of DNA as directed by the probation officer.   He shall not

22   unlawfully use or possess a controlled substance.

23             In addition, the following special conditions would be

24   imposed:   Orientation of life skills condition, the payment of

25   restitution, and GED or vocational training.

1          There is a special assessment in the amount of $200,

2    which is due immediately.

3          I find no reason to depart from the guidelines, that is

4    a guideline sentence.  The mandatory life sentence is a guideline

5    sentence, and under these facts are certainly well within what

6    was contemplated by the Sentencing Commission.

7          Mr. Hardy, you do have the right to appeal your sentence

8    and conviction, as you've already done so to some extent.  And,

9    if you're unable to afford the counsel, services of an attorney

10   to handle your appeal, counsel will be appointed for you.  And

11   also, if you cannot afford it, a transcript of the record in this

12   case will be prepared at government expense.

13         Any of recommendation -- I guess, it is to a facility --

14         MR. LARSON:  Yes, Your Honor.  Pollock, Louisiana.  The

15   federal --

16         THE COURT:  Have lifers in Pollock?

17         MR. LARSON:  Yes, Your Honor.  There is a penitentiary,

18   there's a USPS Pollock.

19         THE COURT:  All right.  Recommend that the facility

20   where Mr. Hardy serve his sentence be at Pollock, Louisiana.  The

21   federal penitentiary at Pollock, Louisiana.

22         Anything else?

23         MR. LARSON:  Your Honor, simply, for the record, I'd

24   have to note an objection to the sentence in this matter.

25         THE COURT:  Okay.  Your objection is noted.

1          All right.  Thank you all.

2          Anything else on the docket, Ms. County?

3          THE CLERK:  No.  That completes the docket.

4          (10:18 a.m., proceedings concluded.)

5

6                         CERTIFICATE

7

8

          I, Susan A. Zielie, Official Court Reporter, do hereby
9     certify that the foregoing transcript is correct.

10

11
                              /S/ SUSAN A. ZIELIE, FCRR
12                            _____
                                  Susan A. Zielie, FCRR
13

14

15

16

17

18

19

20

21

22

23

24

25