USDC DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Oct 20 2025

CAROL L. MICHEL
CLERK

cf                                    Mail

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | Crim No. 2:94-cr-00381-ILRL-MBN-2 |
| PAUL HARDY, | § | |
| Defendant. | § | |

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018

COMES Defendant, PAUL HARDY ("Hardy"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by

1

the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. PROCEDURAL HISTORY

### A.    Procedural Background

On August 18, 1995, a grand jury in United States District Court for the Eastern District of Louisiana, New Orleans Division, returned a three (3) Count Third Superseding Indictment, charging Hardy and two other co-defendants. See Doc. 187.[1] Count 1sss charged Hardy with Conspiracy to Violate Kim Marie Groves' ("Groves") Constitutionally Protected Right to Liberty by the Use Of Excessive Force, While Acting Under Color of Law, "Resulting in [Her] Death, in violation of 18 U.S.C. § 241. *Id.* Count 2sss charged Hardy with Aiding and Abetting, Substantive Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242. *Id.* Count 3sss charged Hardy with Aiding and Abetting, Willfully Killed Groves to Prevent Communication to Law Enforcement, in violation of 18 U.S.C. § 242. *Id.*

On April 8, 1996, a thirteen-day jury trial commenced. See Doc. 465.

---

[1] "Doc." refers to the U. S. District Court for the Eastern District of Louisiana, New Orleans Division, Docket Report in Criminal Number 2:94-cr-00381-ILRL-MBN-2, which is immediately followed by the Docket Entry number.

On April 24, 1996, the jury returned a guilty verdict as to Hardy and Davis on all three counts alleged in the Third Superseding Indictment, and found Causey guilty on Counts 1sss and 2sss. See Doc. 498.

On November 6, 1996, Hardy was sentenced to concurrent sentences of death as to Counts 1sss, 2sss and 3sss. See Docs. 629, 630.

On November 14, 1996, Hardy timely filed a Notice of Appeal. See Doc. 633.

On August 16, 1999, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") affirmed Hardy's conviction as to Counts 1sss and 2sss, but reversed his conviction as to Count 3sss. See ROA. 2130.[2] The case was remanded to the District Court for resentencing. See ROA. 2130.

On September 9, 2000, the government renewed its Notice of Intent to Seek the Death Penalty, Setting Out the Required Federal Death Penalty Act of 1994 ("FDPA") Intent and Aggravating Factors. See ROA. 2175.

On December 21, 2011, Hardy was resentenced on Counts 1sss and 2sss to concurrent terms of life imprisonment, 5 years Supervised Release, $3,593.05 Restitution, no fine and a $200 Mandatory Special Assessment Fee. See ROA 4288.

On December 29, 2011, Hardy timely filed a Notice of Appeal. See ROA. 4294.

---

[2] "ROA." refers to the record on appeal in No. 18-30617, which is immediately followed by the page number.

On January 3, 2013, the Fifth Circuit affirmed Hardy's convictions and sentences on Counts 1sss and 2sss. See ROA. 4310.

On April 3, 2013, Hardy timely filed a Petition for a Writ of Certiorari to the Supreme Court of the United States. No Doc. Entry.

On October 9, 2013, the Petition for a Writ of Certiorari to the Supreme Court of the United States was denied. See ROA. 4317.

On October 7, 2014, Hardy timely filed his Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support Thereof ("§ 2255 Motion"). See ROA. 4325, 4339.

On March 22, 2018, the Court issued an Order and Reasons and Final Judgment for denying Hardy's § 2255 Motion without an evidentiary hearing. See ROA. 4560, 4573.

On May 14, 2018, Hardy timely filed a Notice of Appeal of the Order and Reasons and Final Judgment of the District Court. See ROA. 4576.

On April 8, 2019, the Fifth Circuit denied Hardy's certificate of appealability ("COA"). See Doc. 2477. Hardy has not filed any other pleadings since that time.

### B.    Statement of the Relevant Facts

#### 1.    Offense Conduct

This case centers around the murder of Groves on October 13, 1994, in New Orleans, Louisiana. At that time, Davis, a New Orleans police officer, allegedly exchanged protection for favors with Hardy, then an alleged New Orleans drug dealer. One of Hardy's alleged favors, at Davis' request, was to murder Groves. See *United States v. Davis*, 380 F.3d 821, 824 (5th Cir. 2004).

Davis allegedly requested her murder because Groves allegedly witnessed Davis' police partner pistol-whip an individual in her neighborhood. *Id.* She filed a complaint against Davis with the New Orleans Police Department's internal affairs office. *Id.* After Davis learned of the complaint, he allegedly contacted Hardy by telephone and they discussed a plan to kill Groves. *Id.* Davis arranged to have Hardy and Causey meet him at the police station in order to take them to her. *Id.*

Throughout the day and into the evening, Davis, Hardy, and Causey allegedly searched for Groves. *Id.* Eventually, Davis found her that day and allegedly paged Hardy to describe her clothing and location. Davis then allegedly called Hardy on his cellular telephone to order the murder, and Hardy allegedly replied he was "on [his] way". *Id.* On October 13, 1994, Hardy allegedly shot Groves in the head and killed her. *Id.*

#### 2.    Trial Proceeding

Jury trial commenced on April 8, 1996 before Judge Ginger Berrigan. See ROA. 1629-33. The trial evidence included recorded telephone conversations among the defendants before and after the murder, during which they planned and attempted to hide their involvement with the crime. The recorded interceptions of Davis'

cellular phone conversations were obtained pursuant to a court-authorized investigation of a suspected drug protection racket allegedly run by Davis and other corrupt New Orleans police officers. The context of and predicate for the tapes were established by testimony from Sammie Williams, Davis' police partner who was present in the police car during many of the taped conversations. Steve Jackson ("Jackson"), who allegedly drove the getaway car for Hardy, also testified for the government. Approximately two weeks later, the jury returned a guilty verdict on all three counts against Davis and Hardy. Causey was found guilty on Counts 1sss and 2sss, but the jury was unable to reach a verdict on Count 3sss.

### 3.    Sentencing Proceeding

At the sentencing phase of trial, the jury was instructed to decide whether an FDPA "death qualifying factor" existed for either Davis or Hardy. See 18 U.S.C. §§ 3592 and 3593(d). See *Davis*, 380 F.3d at 824. The jury found that Davis and Hardy had intentionally killed Groves, and did so after substantial planning and premeditation (the FDPA aggravating factor included in the earlier-referenced notices of intent to seek the death penalty pursuant to 18 U.S.C. § 3592(c)(9)). *Id.* Accordingly, the District Court conducted a capital sentencing hearing. See 18 U.S.C. § 3593(e). Following that hearing, the jury decided the death penalty was appropriate. Thereafter, Davis and Hardy were sentenced to death, and Causey was sentenced to

life imprisonment. See *Davis*, 380 F.3d at 825.

### 5.    Appellate Proceeding

On appeal, the Fifth Circuit affirmed the convictions of all three defendants for Counts 1sss and 2sss, but vacated them for Count 3sss for Davis and Hardy (as noted, Causey had not been convicted on that count). *Id.* Davis' and Hardy's death sentences were vacated because the Fifth Circuit found that it was impossible to conclude that the jury recommended the death penalty on the basis of Counts 1sss and 2sss, but not Count 3sss. As such, the case was remanded for resentencing. See ROA. 2130.

### 6.    Resentencing Proceeding

On remand, both Hardy and Davis argued that the Third Superseding Indictment was insufficient to support the death penalty because it lacked certain aggravating statutory factors. The District Court agreed and concluded that the death penalty was unavailable against both Hardy and Davis, although it concluded that the Third Superseding Indictment would support a sentence of life imprisonment. The government appealed the District Court's conclusion.

On August 16, 1999, the Fifth Circuit vacated the District Court's Order and remanded the case, concluding that the Third Superseding Indictment's deficiencies were constitutional error, but that the error was harmless because the government had given pretrial notice of its intent to seek the death penalty and provided a detailed list

of the aggravating factors on which it relied. On the second remand, the District Court did not conduct the contemplated new jury trial on the death penalty issue because it found, after conducting an extensive *Atkins v. Virginia*, 536 U.S. 304 (2002) hearing that Hardy could not receive the death sentence due to his mental retardation. The District Court then ordered the U. S. Probation Office to prepare a PSR.

The Court preserved the issues on-the-record, and there were no other objections to the PSR. *Id.* The Court then sentenced Hardy to life imprisonment on Counts 1sss and 2sss, five (5) years of Supervised Release, $3,593.05 restitution, no fine, and a $200 Mandatory Special Assessment Fee. See ROA. 4294.

### 6.    Postconviction Procceding

On April 3, 2013, Hardy timely filed a Petition for a Writ of Certiorari to the Supreme Court of the United States, but the Petition for a Writ of Certiorari which was denied on October 9, 2013. See ROA. 4317.

Based on the above, Hardy's one year limitation period date for timely filing his § 2255 motion is October 8, 2014. This is one year from the date of the denial of his Petition for a Writ of Certiorari to the Supreme Court of the United States. See *Clay v. United States*, 537 U.S. 522 (2003). In *Clay*, the Supreme Court held that finality attaches when this Court affirms a conviction on the merits on direct review, or denies a petition for a writ of certiorari, or when the time for filing a certiorari

petition expires. See e. g., *Caspari v. Bohlen*, 510 U. S. 383, 390 (1992). Accordingly, Hardy's § 2255 motion was timely filed.

On October 7, 2014, Hardy timely filed his Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support Thereof ("§ 2255 Motion"). See ROA. 4325 & 4339.

On March 22, 2018, the Court issued an Order and Reasons and Final Judgment for denying Hardy's § 2255 Motion without an evidentiary hearing. See ROA. 4560 & 4573.

On May 14, 2018, Hardy timely filed a Notice of Appeal of the Order and Reasons and Final Judgment of the District Court. See ROA. 4576.

On April 8, 2019, the Fifth Circuit denied Hardy's certificate of appealability ("COA"). See Doc. 2477.

### III. <u>DISCUSSION</u>

As a preliminary matter, Hardy respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

9

**A.    Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence**

This Court has the power to adjust Hardy's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

**1.    Historical Framework**

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that

the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id.* at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

2.    Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission…shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria

to be applied and a list of specific examples." Congress provided one limitation to

that authority: "[r]ehabilitation of the defendant alone shall not be considered an

extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could,

however, be considered with other reasons to justify a reduction.

Pursuant to section 994(p) of title 28, United States Code, the United States

Sentencing Commission hereby submits to the Congress the following amendments

to the Guidelines Manual and the reasons therefor. As authorized by such section, the

Commission specifies an effective date of November 1, 2023, for these amendments:

   (b)   *Extraordinary and Compelling Reasons.*– Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

      (1)   *Medical Circumstance of the Defendant.*–

         (A)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.

         (B)   The defendant is—

            (i)   suffering from a serious physical or medical condition,

            (ii)   suffering from a serious functional or cognitive impairment, or

            (iii)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the

defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)   The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)   The defendant presents the following circumstances—

(i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)   due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)   such risk cannot be adequately mitigated in a timely manner.

(2)   *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3)    *Family Circumstances of the Defendant.*—

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4)    *Victim of Abuse.*— The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A)    sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

14

(B)    physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5)    *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)    *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a

sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

### 3. The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release

applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as … improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

### 4.    Hardy Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

On May 23, 2025, Hardy has filed a request for compassionate release to S. Lovett ("Lovett"), Warden, USP McCreary however, on July 16, 2025, Lovett determined that Hardy did not meet the criteria necessary to support a recommendation for compassionate release. See Exhibit 1. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Hardy's

behalf, exhaustion of administrative remedies is not an issue in this case. See 18

U.S.C. § 3582(c)(1)(A).

**B.** **The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of

imprisonment once it has been imposed except that, in any case:

> The court, upon motion of the Director of the Bureau of Prisons, or the defendant, pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

> > (i)    extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least three extraordinary and compelling reasons

warranting such a reduction, discussed as follows:

1.    First Step Act— Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)

Hardy's case exemplifies the type of extraordinary and compelling

circumstance contemplated by courts when evaluating whether an unusually long

18

sentence, combined with significant time served, warrants compassionate release. Hardy has already served more than thirty-one (31) years in federal custody. This far exceeds the ten-year minimum threshold contemplated by the Sentencing Commission's recent policy guidance, which recognizes that an "unusually long sentence" may qualify as extraordinary and compelling when intervening changes in law would create a gross disparity between the sentence imposed and the sentence likely to be imposed today.

The Fifth Circuit has emphasized that while district courts retain broad discretion under 18 U.S.C. § 3582(c)(1)(A), they must give "full consideration" to the defendant's individualized circumstances. See *United States v. Jean,* 84 F.4th 575, 582 (5th Cir. 2023) (explaining that compassionate release requires consideration of both extraordinary and compelling reasons and the § 3553(a) factors). Where, as here, a defendant has already served decades of imprisonment—longer than what modern sentencing practices would likely impose—the disparity itself constitutes a compelling reason for relief.

In *United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023), the Fifth Circuit recognized that non-retroactive changes in sentencing law, when coupled with an unusually long sentence, can be considered in the compassionate release framework. Although Congress has not made all statutory changes retroactive, the

19

Sentencing Commission has clarified that courts may weigh such disparities where a defendant has already served at least ten years. Hardy's thirty-one years served—triple that minimum threshold—underscores the severity of the disparity.

Other circuits have likewise acknowledged this principle. For example, in *United States v. Ruvalcaba*, 26 F.4th 14, 25 (1st Cir. 2022), the First Circuit held that "gross sentencing disparities created by subsequent changes in law" may constitute extraordinary and compelling reasons. Similarly, the Fourth Circuit in *United States v. McCoy*, 981 F.3d 271, 285–87 (4th Cir. 2020), affirmed compassionate release where defendants were serving stacked § 924(c) sentences far beyond what Congress would require today.

Applying those principles here, Hardy's sentence is not only unusually long, but it is also one that, in light of legal and policy changes since his conviction, would likely be far shorter if imposed today. The thirty-one years already served represent punishment well beyond what is necessary to achieve the purposes of sentencing under § 3553(a). As the Fifth Circuit recently observed, district courts may not "dismiss disparity concerns out of hand" but must evaluate whether such differences render continued incarceration greater than necessary to serve the goals of justice. *Jean*, 84 F.4th at 583.

In sum, Hardy's thirty-one years of imprisonment, when measured against contemporary sentencing law and policy, present the quintessential case of a gross disparity. His unusually long sentence, combined with the extraordinary length of time already served, constitutes a compelling basis for relief under § 3582(c)(1)(A).

> ### 2. Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

With respect to the need to avoid unwarranted sentencing disparities, Hardy urges this Court to consider the changing legal landscape and sentencing practices both at the time of his sentencing and in the context of post-First Step Act reforms. Specifically, Hardy's sentence in 1996 is disproportionate when compared to sentences for similarly situated defendants sentenced after the enactment of the First Step Act.

> > ### i. Fifth Circuit Case Law Supporting Compassionate Release and the Consideration of Sentence Disparities

> > > #### a. *United States v. Jean*, 84 F.4th 575 (5th Cir. 2023)

> > > In *Jean*, the Fifth Circuit emphasized that district courts must fully consider both the extraordinary and compelling reasons asserted and the § 3553(a) sentencing factors when adjudicating compassionate release. The court explained that while the Sentencing Commission's policy statements provide guidance, district courts retain authority to consider

disparities and individualized circumstances in their analysis. Jean underscores that a court cannot "dismiss disparity concerns out of hand" but must weigh them against sentencing purposes.

b.    *United States v. McMaryion*, 64 F.4th 257 (5th Cir. 2023)

The Fifth Circuit held that non-retroactive changes in sentencing law may, in certain circumstances, be considered as part of a compassionate release motion. While the court declined to grant relief on the specific facts in *McMaryion*, it clarified that district courts are not barred from evaluating whether such non-retroactive changes produce extraordinary and compelling disparities in sentencing outcomes. This is directly relevant where a defendant's unusually long sentence far exceeds what would likely be imposed under current law.

c.    *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023)

The court reiterated that "extraordinary and compelling" is a flexible standard and that courts may weigh a variety of individualized factors, including sentence length and evolving sentencing practices. Although Escajeda denied relief on the record presented, it confirmed that district courts may account for sentence disparities when evaluating compassionate release.

d.    *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021)

In *Shkambi*, the Fifth Circuit held that the policy statement in U.S.S.G. § 1B1.13 does not constrain

22

courts when considering compassionate release motions brought by defendants themselves. This decision opened the door for district courts to consider factors beyond those listed in § 1B1.13—including unusually long sentences and sentencing disparities—as part of the extraordinary and compelling reasons analysis.

e. _United States v. Cooper_, 996 F.3d 283 (5th Cir. 2021)

The Fifth Circuit recognized that compassionate release requires an individualized assessment that balances the reasons for release with the goals of sentencing under § 3553(a). Cooper reflects the court's acknowledgement that excessive punishment relative to current norms may warrant relief when considered alongside a defendant's rehabilitation and time served.

ii. Broader Appellate Authority on Disparity (Compassionate Release):

a. _United States v. McCoy_, 981 F.3d 271, 285–87 (4th Cir. 2020) – upholding compassionate release where defendants had already served lengthy sentences that were far greater than necessary to achieve the purposes of sentencing.

b. _United States v. Parker_, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) – granted release after the defendant had served over 20 years, noting the diminishing justifications for continued incarceration.

23

c.   *United States v. Black*, 999 F.3d 1071, 1075 (7th Cir. 2021) – recognized time served as a significant factor that can diminish the need for further confinement.

Hardy is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act and grants of compassionate releases based on the need to avoid unwarranted sentencing disparities, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Hardy essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants– those being sentenced today under a different sentencing structure and/or received a reduction in sentence based on the need to avoid unwarranted sentencing disparities. Hardy's sentence in 1996 is now disparate relative to Defendant's who were sentenced after December 21, 2018.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006)

("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly

25

account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

### 3.    Hardy's Remarkable Rehabilitation

Hardy's conduct over the past three decades demonstrates extraordinary post-conviction rehabilitation that strongly supports compassionate release. Since the beginning of his incarceration, Hardy has consistently worked to improve himself and to prepare for a productive, law-abiding life after prison. See Exhibit 2. His Bureau of Prisons records reflect the completion of numerous educational and skills-based programs, vocational certifications, and faith-based courses—achievements that collectively demonstrate his commitment to personal growth and readiness for reentry.

The Fifth Circuit has long recognized that rehabilitation, while not alone sufficient, is a relevant factor in the compassionate release analysis. *United States v. Jean*, 84 F.4th 575, 583 (5th Cir. 2023) (explaining that district courts must consider individualized factors such as rehabilitation when weighing compassionate release motions). Indeed, courts are required to give "full consideration" to a defendant's demonstrated progress and changed circumstances in determining whether continued incarceration is necessary. *Id.*

Moreover, Hardy's "Low Risk Recidivism" PATTERN score further confirms that his release would not endanger public safety. Courts routinely find such evidence persuasive in assessing whether the goals of deterrence and public protection under § 3553(a) remain compelling. See *United States v. Cooper*, 996 F.3d 283, 288 (5th Cir. 2021) (emphasizing that courts must consider whether continued incarceration serves any legitimate sentencing purpose in light of rehabilitation and time served). Similarly, in *Pepper v. United States*, 562 U.S. 476, 491 (2011), the Supreme Court held that post-sentencing rehabilitation is highly relevant to sentencing decisions, as it provides "the most up-to-date picture" of the defendant's character and likelihood of reoffending.

Other circuits have echoed this reasoning. For instance, in *United States v. McCoy*, 981 F.3d 271, 286–87 (4th Cir. 2020), the court recognized that extensive

rehabilitation combined with an unusually long sentence constituted extraordinary and compelling reasons for release. Hardy's case presents an even stronger showing—more than 31 years of incarceration, exemplary institutional conduct, completion of rehabilitative programs, and an objectively low risk of recidivism.

Taken together, Hardy's rehabilitation, his deeply felt remorse, and his declining health strongly diminish any § 3553(a) concerns of deterrence or public protection. As the Fifth Circuit has instructed, compassionate release must be assessed against present circumstances, not merely past conduct. *Jean*, 84 F.4th at 582–83. Here, Hardy has proven that he has transformed himself and is prepared to re-enter society as a responsible, law-abiding citizen. Thus, Hardy respectfully prays that this Court recognize his remarkable rehabilitation as an extraordinary and compelling basis for relief and grant him the opportunity to demonstrate his redemption in the community.

Under 18 U.S.C. § 3582(c)(2), to modify Hardy's sentence, taking into account the advisory nature of the guidelines after *Brooker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

# V. CONCLUSION

For the above and foregoing reasons, Hardy prays this Court would grant his

Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First

Step Act of 2018 in accordance with U.S.S.G. Amendments 814, and resentence him

to time served or any other relief that the Court deems appropriate.

Respectfully submitted,

Dated: September 28, 2025

*Paul Hardy*

PAUL HARDY
REG. NO. 24329-034
USP MCCREARY
U.S. PENITENTIARY
P.O. BOX 3000
PINE KNOT, KY 42635

## CERTIFICATE OF SERVICE

I hereby certify that on September ___, 2025, a true and correct copy of the above and foregoing Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 was sent via U. S. Mail, postage prepaid, Michael Edward McMahon, Assistant U.S. Attorney at U. S. Attorney's Office (New Orleans), 650 Poydras St., Suite 1600, New Orleans, LA 70130.

*Paul Hardy*

PAUL HARDY

## V. **CONCLUSION**

For the above and foregoing reasons, Hardy prays this Court would grant his

Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First

Step Act of 2018 in accordance with U.S.S.G. Amendments 814, and resentence him

to time served or any other relief that the Court deems appropriate.

Respectfully submitted,

Dated: October 12, 2025

PAUL HARDY
REG. NO. 24329-034
USP MCCREARY
U.S. PENITENTIARY
P.O. BOX 3000
PINE KNOT, KY 42635

### **CERTIFICATE OF SERVICE**

I hereby certify that on October __, 2025, a true and correct copy of the above
and foregoing Motion for Compassionate Release pursuant to 18 U.S.C. §
3582(c)(1)(A) and First Step Act of 2018 was sent via U. S. Mail, postage prepaid,
Michael Edward McMahon, Assistant U.S. Attorney at U. S. Attorney's Office (New
Orleans), 650 Poydras St., Suite 1600, New Orleans, LA 70130.

PAUL HARDY