UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 94-381** |
| v. | * | SECTION: "B" |
| **PAUL HARDY** | * | |
| | * * * | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)**

NOW COMES the United States of America, through the undersigned Assistant United States Attorney, and hereby files the Government's Response in Opposition to Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the Defendant's motion should be denied.

## I.   PROCEDURAL HISTORY

On December 13, 1994, a federal grand jury in the Eastern District of Louisiana charged Len Davis, Damon Causey and the Defendant Paul Hardy in a single-count indictment with Conspiracy Against Rights Resulting in Death in violation of 18 U.S.C 241. Rec. Doc. 1. On January 17,1995, the Government filed a superseding indictment which charged the Defendant, Davis and Causey with Conspiracy Against Rights Resulting in Death in violation of 18 U.S.C 241, Deprivation of Rights Under Color of Law Resulting in Death in violation of 18 U.S.C. 242 and Killing a Witness to Prevent the Witness from Proving Information Regarding a Federal Offense in violation of 18 U.S.C. 1512. Rec. Doc. 50. A Second Superseding Indictment was filed on March 24, 1995, which charged the Defendant, Davis, and Causey with the same offenses. Rec. Doc. 99. The Government filed its Notices of Intent to Seek the Death Penalty Against Davis and the Defendant on July 31, 1995. Rec. Docs. 178, 179. No notice was filed as to Causey. A

Third Superseding Indictment was filed on August 18, 1995, which made technical changes to the indictment but again charged the Defendant, Davis and Causey with the same offenses. Rec. Doc. 187. Trial commenced on April 8, 1996. Rec. Doc. 465. On April 24, 1996, the jury returned its verdicts and found Davis and the Defendant guilty of all counts. Rec. Doc. 498. Causey was found guilty as to Count One, Conspiracy Against Rights Resulting in Death in violation of 18 U.S.C 241 and Count Two, Deprivation of Rights Under Color of Law Resulting in Death in violation of 18 U.S.C. 242. *Id*. The jury was unable to reach a verdict on Count Three, Killing a Witness to Prevent the Witness from Proving Information Regarding a Federal Offense in violation of 18 U.S.C. 1512 as to the Defendant and the trial court declared a mistrial as to that Count. *Id*. Penalty phase hearings were held. On April 26, 1996, the jury sentenced the Davis to death. Rec. Doc. 524. The jury likewise returned a sentence of death against the Defendant on May 1, 1996. Rec. Doc. 528. The Fifth Circuit Court of Appeals affirmed the convictions and sentences against the Defendant with exception that it vacated his conviction and sentence for Count Three, Tampering with a Witness *See United States v. Causey*, 185 F.3d. 407, 423 (5th Cir. 1999). The Fifth Circuit also vacated the Death Sentences on Counts One and Two and remanded the matter for resentencing. *Id*. The death sentence against the Defendant was later vacated by Judge Berrigan during a post-conviction hearing after finding that he failed to meet the *Adkins* standard. Rec. Doc. 2173. He was thereafter sentenced to life imprisonment. Rec.Doc. 2257. Defendant Len Davis was again sentenced to death but his sentence was commuted to life imprisonment without the possibility of parole by President Biden on December 23, 2024. Rec. Doc. 2498.

Subsequently, the Defendant filed this Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). Rec. Doc. 2499. The Court ordered the Government to file its Response by November 21, 2025. Rec. Doc. 2500. An extension of time to December 22, 2025, for the

Government to file its response was granted. Rec. Doc. 2502. This pleading is made pursuant to that order.[1]

## II.    FACTS

This case involved "the execution-style murder" of Kim Marie Groves. *Causey*, 185 F.3d at 411. Davis, a New Orleans police officer, targeted Groves because she filed a complaint against him with the Internal Affairs Division ("IAD") of the New Orleans Police Department which alleged that he engaged in police brutality. *Id*. Davis had a corrupt relationship with the Defendant a New Orleans drug dealer, in which Davis exchanged police protection for favors. *Id*. Davis recruited Causey and the Defendant, who was an associate of the Defendant in the drug trafficking trade, to kill Groves. *Id*.[2]  "Davis, [the Defendant] and Causey planned the murder and subsequent

---

[1] A defendant seeking a reduction in sentence must fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or wait 30 days from the receipt of such a request by the warden of the defendant's facility before filing a motion. See 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has "clarified that the requirement that a defendant file a request with [BOP] before filing a motion in federal court is a mandatory, but non-jurisdictional, claim-processing rule." *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *1 (E.D. La. Dec. 22, 2020) (Lemmon, J.) (*citing United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020)). "As such, it is mandatory if properly raised, but may be waived or forfeited by an opposing party." *Id*. (citing *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019)). The Defendant file a compassionate release request to the Bureau of Prisons on May 23, 2025, and BOP's denial on July 16, 2025. *See* Defendant's Exhibit A, Request and Denial. *See* Rec. Doc. 2499-1. Thus, the Defendant has exhausted his administrative remedies, and this Court may consider his motion.

[2] "The jury heard evidence that Davis misused or abused his official authority in planning, carrying out and covering up the murder. On October 13, 1994, Davis, along with his police partner Sammie Williams, who testified for the Government, began their shift around 2:30 p.m. During that shift, Davis paged the Defendant and Causey, discussed with them his plan to have Groves killed, met with them in the police station, then took them in his police car to show them the area that Groves frequented. The jury heard Davis's voice on tape telling Williams, 'I could get 'P' to come do that 'hoe' now. And then we handle the thirty.' Williams testified that the statement meant that Davis would get the Defendant to kill Groves, then Davis and Williams would respond to the murder scene and 'handle' any evidence that might link the Defendant to the crime. Later in the shift, while patrolling in the police car, Davis spotted Groves and paged the Defendant to give him Groves's location. Hardy killed Groves shortly after Davis went off duty and Davis used his police radio to confirm the hit with the police officer at the murder scene." 185 F.3d at 415-416.

3

coverup." 185 F.3d at 411. The Defendant was the triggerman. *Id.* The gun used in the murder was retrieved from Causey's house. Causey, who accompanied the Defendant in a car driven by Steven Jackson to the murder of Kim Groves, took possession of the weapon afterward.". Rec. Doc. 686-2, at 126, 224 (Testimony of Steven Jackson).

There was also testimony at trial from Steven Jackson, a member of Hardy's drug trafficking crew that he had seen Davis and the Defendant together in the presence of guns and drugs, that Causey was "in the game" and that "in the game" meant that Causey was "involved in dealing drugs, robbing and killing people." 185 F.3d at 418; Rec. Doc. 686-2, at 102, 117-118. Indeed, the trial court found that the Causey was Defendant's "right hand man" and "an integral part of the conspiracy." 185 F.3d at 416.

## III    LAW AND ARGUMENT

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' that cannot be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. *United States v. Avila*, Case No. 1:09-CR-4(1), 2025 WL 2210733 at *3 (E.D.Tex, August 3, 2025). This statute gives a court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub.L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

4

>  unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) 2 to the extent that they are applicable, if it finds that—
>
>  (i) extraordinary and compelling reasons warrant such a reduction; or
>
>  (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ....

18 U.S.C. § 3582(c)(1)(A). This provision is commonly known as "compassionate release." *See, e.g., United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities."). Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024*), abrogated on other grounds by United States v. Austin,* 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Sentencing Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP and thus, the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, i27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

5

On November 1, 2023, the Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. See U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." Id. § 1B1.13(b). These categories are:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the family circumstances of the defendant;

(4) whether the defendant was a victim of abuse while in custody;

(5) other reasons similar in gravity to those previously described; and

(6) an unusually long sentence.

Id. § 1B1.13(b)(1)-(6).[3] A s a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

---

[3] (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) Limitation on Changes in Law. —Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; see also U.S.S.G. § 1B1.13(b)(6), (c).

(1) the defendant must have exhausted his administrative remedies;

(2) "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii)

(3) the reduction must be consistent with the Commission's applicable policy statements;

and

(4) the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); see also *Austin*, 125 F.4th at 692.

The Defendant has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Rec. Doc. 2499.  He asserts three grounds for this request:

- The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct Are Extraordinary and Compelling Circumstances That Warrant Release. *Id*. at 18.

- Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.  *Id*. at 21.

- Hardy's Remarkable Rehabilitation.  *Id*. at 26.

The "burden falls on the defendant to convince the district judge to exercise discretion to grant the motion for compassionate release." *United States v Perez-Barocela*, 2022 WL 2651965, *3 (S.D.Tex), *quoting Ward v United States*, 11 F.4th 354, 359–60 (5th Cir 2021).  As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted). To establish that a defendant should be afforded compassionate release, the defendant must show "extraordinary and compelling circumstances exist".  As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3, 382 F.Supp.3d 1185 (D.N.M. June 7, 2019) (citations omitted).  As the succeeding

paragraphs make clear, he is not entitled to the relief under any basis asserted. As such, his motion should be denied.

> A. **The Defendant has failed to establish that Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct Are Extraordinary and Compelling Circumstances that Warrant Release.**

The Defendant argues that his present sentence presents a "quintessential case of a gross disparity" and is an usually long sentence. Rec. Doc. 2499 at 2. He offers no evidence to support either claim and cites no changes in the law or sentencing guidelines that support his request for a lesser sentence. The sentence authorized by both statutes for which he stands convicted is a term of years, life imprisonment or death. See 18 U.S.C. 241, 242. This range was in effect at the time of conviction and remains the same today. As discussed below, the Guideline provisions also remain the same. There is therefore no indication that changes in the law that have or could produce a "gross disparity" between the Defendant's sentence and the sentence he would receive at the time he filed his motion. Moreover, life imprisonment is not the most severe punishment he faced. It cannot be argued that a sentence within the statutory range is unusually long. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("Put another way, there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute."); *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2022) ("The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance.").

Defendant's protestations to the contrary, his sentence would not be different today. The Defendant was sentenced to life imprisonment in 1996 as a result of his two convictions for a horrific murder. These guideline calculations and findings were specifically affirmed by the Fifth Circuit. *See United States v. Causey*, 185 F.3d at 420-21. Today, as it was in 1994 when the

8

Defendant participated in the murder of Kim Groves, conviction of Title 18, United States Code, Section 241, Conspiracy Against Rights Resulting in Death is punishable under Title 18, by imprisonment "for any term of years or for life or both" or death. Title 18, United States Code, Section 242, Deprivation of Rights under color of law carries an identical punishment range. Under the current Sentencing Guidelines, the Defendant's offenses would fall under §2H1.1 Offenses Involving Individual Rights as they did in 1996. However, because the offense involved a premeditated murder, the applicable guideline is §2A1.1, again is as it was in 1996. See §2H1.1 Commentary and Application Note 1. The Base Offense Level for §2A1.1 is 43. This results in a life sentence.[4]

The Defendant also complains that there are unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. He offers no proof to support this claim. Indeed, the opposite is true. Both of his co-defendants are presently serving life sentences for their participation in this offense. Likewise, other individuals are serving life sentences for murdering a witness. *See e.g. United States v. Ramirez*, Crim. No. 5:98-620-1, 2023 WL 6518095 (S.D.Tex., October 4, 2023) (murder victim was cooperating individual) (defendant had served 23 years at time of motion); *United States v. Sylvester*, Crim. No. 04-0094, 2021 WL 1226408 (E.D.La. April, 1, 2021) (murder of witness); *United States v. Duarte*, No. 99 Cr. 192 (CSH), 2025 WL 1434886 (S.D.N.Y.|, May 19, 2025)(murder of informant witness); *United States v. Lightfoot*, 483 F.3d 876 (8th Cir. 2007), *United States v. Pimentel*, No. 23-7096-cr, 2025

---

[4] Today, the Sentencing Guidelines are advisory rather than mandatory. United States v. Booker, 543 U.S. 220, 244-45 (2005). Under the post-Booker advisory guideline sentencing system, district courts are permitted to make factual findings relevant to sentencing under a preponderance of the evidence standard. *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.2005); *see also United States v. Hinojosa*, 749 F.3d 407, 412–13 (5th Cir.2014). He provides no evidence or facts that would lead a reasonable person to believe that a district judge looking at the evidence that was presented at trial would disagree with Judge Berrigan and find the cold-blooded execution of Kim Groves to be manslaughter and not premedated murder.

WL783730 (2d Cir. March 12, 2025)(murder of informant witness, motion of compassionate release denied).

### B. The Defendant has failed to establish that Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct Exist.

The Defendant argues, without any evidence or documentation that there are unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct exist and this provides a basis for the relief he seeks. A review of cases in the Fifth Circuit that the opposite is true. Indeed, courts in this Circuit routinely deny compassionate release to persons that have been convicted of murder and have been sentenced to life imprisonment. *See United States v. Ramirez*, *supra*; *United States v. Duarte, supra*; *United States v. Sylvester*, *supra*; *United States v. Smith*, Crim. No. 04-172025 WL 708519 (E.D.La, March 5, 2025); *United States v. Porter*, Crim. No. 01-282, 2025 WL 2444118 (E.D.La, August 25, 2025); *United States v. Bates*, Crim. No. 13-66, 2024 WL 4692128 (E.D. La., November 6, 2024); *United States v. Elwood*, Crim. No. 92-469, 2024 WL 454976 (E.D.La., February 6, 2024); *United States v. Helmstetter*, Crim. No. 92-469, 2023 WL 2810707 (E.D.La., April 6, 2023); *United States v. Wharton*, Crim. No. 00-50066-01, 2022 WL 1019987 (W.D.La. April 5, 2022); *United States v. Zapata*, Criminal No. 2:13-210-2, 2025 WL 1456668 (S.D.Tex., May 21, 2025); *United States v. Bates II, Crim*. No. 13-66, 2024 WL 3274986 (E.D.La. July 2, 2024); *United States v. Botello*, Crim. No. 1:91-CR-141-1, 2021 WL 3661527 (S.D.Tex., 08/18/2021); *United States v. Samuel*, Crim. No. 09-123, 2022 WL 2116918 (E.D.La. June 13, 2022); *United States v. Causey*, Crim. No. 94-381, 2024 WL 4452325, (E.D.La., October 9, 2024).

The Defendant does not cite any U.S.S.G Statistics for the proposition that today he would receive a lesser sentence for the murder of Kim Groves. The most recent statistics found indicate

that the national average sentence for murder is a mean of 274 months and median of 240 and that the mean for the Eastern District of Louisiana was 300 months and median of 360.[5] These statistics do not however prove that the Defendant would receive a lesser sentence today as they do not provide any context as to circumstances of the crime and character of the offender. The statistics do not indicate who was murdered, what degree, how or why. They do not indicate any special facts about the crime or the offender, in aggravation or mitigation, that were considered in passing sentence. There is no indication if the offender was remorseful or provided cooperation in the conviction of coconspirators. In short, it is the Defendant's burden to convince this Court to act. He has failed to show any gross disparity between his sentence and those similarly situated. Moreover, it must be noted that the Defendant did not cooperate, show remorse or otherwise take responsibility for his actions in 1994. A life sentence under the circumstances in this matter is hardly unusually long especially given the availability of the death penalty, the statutory range of punishment and the murder of a citizen witness. Notably, life sentences are available not only for federal murder offenses but also the various states.

### C. The Defendant has not demonstrated extraordinary or compelling reasons for a sentence reduction.

Finally, while the Defendant's rehabilitative efforts might qualify as commendable, they are not "extraordinary and compelling," either on their own or in conjunction with other cited reasons. *See e.g. United States v. Gutierrez*, No. 21-40465, 2022 WL 17832293, at *1 (5th Cir. Dec. 21, 2022) (affirming district court's finding of no extraordinary and compelling circumstances when defendant presented COVID-19 pandemic, exacerbating health conditions, unique family circumstances, and rehabilitative efforts); *United States v. Soto*, No. 11-220, 2021 WL 3682196,

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/lae24.pdf

11

at *7 (E.D. Tex. Aug. 18, 2021) ("Although he provides the court with a list of commendable achievements and goals, [including earning his GED, refraining from disciplinary infractions, and completing courses and programs, defendant] has not presented sufficient grounds for compassionate release."); *United States v. Lewis*, No. 17-28, 2021 WL 4519795, at *1-3 (W.D.N.Y. Oct. 4, 2021) (finding that defendant's rehabilitation and "his plan of action upon release" do not amount to "extraordinary and compelling" reasons for release); *see also United States v. Hudec*, No. 4-91, 2020 WL 4925675, at *5 (E.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *Zapata*, 2025 WL 1456668 at *3 (Moreover, courts may consider a defendant's rehabilitation in combination with other circumstances; however, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t)); *see also* U.S.S.G. §1B1.13(d) ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.").

    **D.**    **The sentencing factors in 18 U.S.C. § 3553(a) weigh against early release.**

If a defendant has demonstrated "extraordinary and compelling reasons," the Court must consider the § 3553(a) factors, and may decline to reduce the defendant's sentence if the factors weigh against granting relief. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (noting that "compassionate release is discretionary, not mandatory, and [can] be refused after weighing the sentencing factors" even when a defendant is eligible). When a defendant fails to demonstrate "extraordinary and compelling reasons," the Court need not consider the § 3553(a) factors. *See United States v. Thompson*, 984 F.3d 431, 433 &n.2 (5th Cir. 2021). Even if the Defendant could establish an extraordinary and compelling circumstances which he has not,

consideration of the applicable § 3553(a) sentencing factors does not support a sentence reduction. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant[.]

18 U.S.C. § 3553(a).

The Defendant was convicted for his involvement in the murder of Kim Groves, an innocent civilian. It was a premediated cold-blooded execution to prevent Ms. Groves from testifying against a corrupt police officer who was protecting the Defendant's drug trafficking activities. This conduct alone weighs against a sentence reduction for not only does it involve the murder of an innocent citizen, but it was also it was a brazen and deadly attempt to obstruct justice and interfere with the administration of justice. Courts have rightly recognized that the murder of a potential witness is especially egregious and is deserving of a severe punishment. *See e.g. Duarte*, 2025 WL 1434886 at 9 ("Here, like the defendant Rodriguez, Duarte's offense involved the murder of a Government informant to prevent that individual from testifying regarding a drug trafficking enterprise. Such a brutal act of violence sent threatening notice to anyone willing to cooperate with the Government. Given the nature of his offense, reduction of Duarte's sentence would conflict with the Section 3553(a) factors by failing to maintain a just punishment, reflect the seriousness of his offense, and promote respect for the rule of law"). Other courts, including other sections of this Court, have denied requests for compassionate release based on similar

criminal conduct. *See United States v. Jones*, No. 09-398, 2023 WL 3737951, at *3 (E.D. La. May 31, 2023) (Barbier, J.) (denying compassionate release for defendant who was a member of the Josephine Dog Pound gang because defendant "was convicted as part of a RICO conspiracy involving a large drug trafficking operation and many instances of violence, including the murder of an innocent bystander during the attempted killing of a rival gang member"); *Hudson*, 2021 WL 2912012, at *5 (denying compassionate release for defendant who was co-leader of Harvey Hustlers gang and whose "criminal history shows a propensity for violence and a consistent disregard for the law"); *United States v. Williams*, No. 12-51, 2021 WL 5833973, at *3 (E.D. La. Dec. 9, 2021) (Lemmon, J.) (denying compassionate release based on defendant's "participating in violent gang activity, including the non-fatal shootings of four people, drug trafficking offenses, and firearms offenses"); *United States v. Lao*, No. 2:16-CR-905, 2020 WL 5258489, at *3 (S.D. Tex. Sept. 1, 2020) (denying compassionate release where "[d]efendant was a crack dealer affiliated with the dangerous gang Tango Orejon").

Anything less than life imprisonment is an insufficient punishment for the Defendant. The Defendant demonstrated he is a violent offender who did not hesitate to coldly execute Kim Groves. Defendant did not accept responsibility for his offense or nor did he express any remorse during the pendency of the prosecution. *See United States v. Frank*, Crim. No. 10-27-JWD-EWD, 2024 WL 3897139 at *2 (M.D.La., August 21, 2024). Notably, he has provided the court with no documentation supporting his lack of dangerousness if released. Instead, his own exhibit reflects continued behavioral issues as late as this year. *See* Rec. Doc 2499-2 at 2-3. (need to address anger, hostility and Antisocial behavior issues). The Warden, who is in a position to access the Defendant's suitability for release denied his initial request based, in part, on his "history of violent behavior." See Rec.Doc. 2499-1 at 4. Under such circumstances, it is impossible to conclude that

releasing him will not endanger the safety of others in the community, a factor that, in addition to being a valid concern under § 3553(a), is an additional independent reason to deny his motion. *See* U.S.S.G. § 1B1.13(a)(2) (stating that, to grant compassionate release, the Court must determine that "[t]he defendant is not a danger to the safety of any other person or the community"); *United States v. Mazur*, 457 F. Supp. 3d 559, 564-65 (E.D. La. 2020) (Africk, J.) ("Even if the Court were to find that Mazur's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he is not a danger to the safety of any other person or to the community[.]") (quotation marks omitted); *United States v. White*, No. 16-40, 2021 WL 1721016, at *5 (E.D. La. Apr. 30, 2021) (Barbier, J.).

Accordingly, even assuming the Defendant could establish extraordinary and compelling circumstances, the § 3553(a) factors, most notably, the nature and circumstances of the offense, that is the murder of a witness and a brazen attempt to obstruct justice, the need for the sentence imposed to provide just punishment for the offense of murder, the need for the sentence imposed to afford adequate deterrence to criminal conduct and deter others from interfering with the administration of justice, and the need for the sentence imposed to protect the public from further crimes of the defendant, weigh against a sentence reduction. The Defendant's motion should be denied.

## IV.     CONCLUSION

For the foregoing reasons, the government requests that the Court deny the Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). *See* Rec. Doc. 2499.

        Respectfully submitted,

        MICHAEL M. SIMPSON
        ACTING UNITED STATES ATTORNEY

        */s/ Mark A. Miller*
        Mark A. Miller (MS Bar No. 105138)
        Assistant United States Attorney
        650 Poydras Street, Suite 1700
        New Orleans, Louisiana 70130
        Telephone: (504) 680-3012
        Email: mark.a.miller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF-registered counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to Paul Hardy, Prisoner No. 24338-034, USP Pollack, U.S.P McCreary, P.O. Box 3000, Pine Knot, KY 42635, by placement in the United States Mail, postage prepaid and properly addressed, this 7th day of February 2024.

        */s/ Mark A. Miller*
        Mark A. Miller
        Assistant United States Attorney